# UNITED STATES DISTRICT COURT
for the
Northern District of California

**E-filing**

| | | |
|---|---|---|
| United States of America<br>v.<br>EDUARDO PACHECO,<br>ELISONDO VARELAS, and<br>RONALD PELAEZ,<br><br>*Defendant(s)* | ) ) ) ) ) ) ) | Case No.<br><br>3 |

FILED JCS
MAR 4 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ March 3, 2011 _____ in the county of _____ Contra Costa _____ in the _____ Northern _____ District of _____ California _____ , the defendant(s) violated:

*Code Section*                          *Offense Description*

21 U.S.C. § 841(a)(1)      Possession with Intent to Distribute Methamphetamine
21 U.S.C. § 846            Conspiracy to Possess with Intent to Distribute Methamphetamine
21 U.S.C. § 843(b)         Use of a Communications Facility in Connection with a Driug Trafficking Offense

This criminal complaint is based on these facts:
Please see the attached affidavit of ICE Special Agent Michael Ertz.
(Approved as to form: _____ AUSA Kevin J. Barry)

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Michael Ertz, Special Agent, ICE
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/4/11

_____
*Judge's signature*

City and state: _____ San Francisco, CA _____      Hon. Joseph C. Spero, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF ICE SPECIAL AGENT MICHAEL ERTZ

I, Special Agent Michael Ertz, Department of Homeland Security, Immigration and Customs Enforcement (ICE), do swear and affirm as follows:

## INTRODUCTION

1. This Affidavit is submitted in support of an application for a Complaint against **EDUARDO PACHECO** for violations of Title 21, United States Code, Sections 841(a)(1) – Possession of Methamphetamine with Intent to Distribute, 846 – Conspiracy to Possess with Intent to Distribute Methamphetamine, and 843(b) – Use of a Communications Facility in Connection with a Drug Trafficking Offense; against **ELISONDO VARELAS** for violations of Title 21, United States Code, Sections 841(a)(1) – Possession of Methamphetamine with Intent to Distribute and 846 – Conspiracy to Possess with Intent to Distribute Methamphetamine; and against **RONALD PELAEZ** for a violation of Title 21, United States Code, Section 846 – Conspiracy to Possess with Intent to Distribute Methamphetamine.

2. The facts and information set forth in this Affidavit are based upon my personal knowledge/observations obtained during this investigation, as well as information provided to me by other law enforcement officers, and other documents and records obtained as a result of this investigation. Subsequently, I utilize the term "agents" throughout this affidavit to identify other agents or officers who have made observations during the course of this investigation. Because this Affidavit is submitted for the limited purpose of setting forth probable cause for the Complaint, I have not included each and every fact known to me concerning this investigation.

## AGENT BACKGROUND

3. I am a special Agent of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") and have been so employed since February of 2006. Prior to my

1

employment as an ICE agent, I was a police officer in Florida and worked for the Port Orange Police Department for approximately 4 years. I am currently assigned to the Drug Enforcement Administration ("DEA") San Francisco Field Division, Oakland Resident Office Enforcement Group 1 as a Task Force Agent. I am concurrently assigned to the Special Agent in Charge ("SAC") San Francisco ICE, Contra/Smuggling Group. My duties and responsibilities involve the investigation of criminal violations of the Controlled Substances Act, Title 21 United States Code.

4. I have received formal training at the Federal Law Enforcement Training Center in Glynco, Georgia and attended the Criminal Investigator Training Program and ICE Special Agent Training from February 2006 to July 2006. Instruction in this training included, but was not limited to, basic narcotic investigations, drug identification, drug detection, familiarization with United States narcotics laws, money laundering techniques and schemes, and surveillance operations. During my tenure with ICE, I have conducted and assisted in numerous narcotics investigations, including the sale of methamphetamine, which have resulted in the arrests and convictions of individuals for violations of federal and state narcotics laws. I have also received on-the-job training in advanced investigative techniques from senior ICE and DEA Agents.

## APPLICABLE LAW

5. Title 21, United States Code, Sections 841 and 846 prohibit a person from manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance and from conspiring to do so. Title 21, United States Code, Section 843(b) prohibits the use of a communication facility during or in relation to a drug trafficking offense. The elements of those offenses are as follows:

    a) The elements of 21 U.S.C. § 841(a)(1) are that the Defendant:

        i) knowingly manufactured, distributed, dispensed, or possessed with

2

the intent to manufacture, distribute, or dispense,

  ii)  a controlled substance.

Per 21 U.S.C. § 802(15), "manufacture" includes "production." And, under 21 U.S.C. § 802(22), "production" includes "the manufacture, planting, cultivation, growing, or harvesting of a controlled substance."

 b) The elements of 21 U.S.C. § 846 are that:

  i)  There was an agreement between two or more persons to possess with intent to distribute a controlled substance; and

  ii)  the Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

 c) The elements of 21 U.S.C. § 843(b) are that the Defendant:

  i)  knowingly or intentionally used a communications facility

  ii)  to help bring about a drug trafficking offense.

## FACTS ESTABLISHING PROBABLE CAUSE

6. In February 2011, the Drug Enforcement Administration (DEA) Oakland Resident Office and Immigration and Customs enforcement (ICE) began an investigation of a methamphetamine drug trafficker by the name of **EDUARDO PACHECO**, who operates in the Redwood City, California area. The investigation has utilized (among other techniques) Cooperating Sources (CSs), analyzing telephone toll and GPS information, and surveillance.

7. On February 24, 2011 a proven reliable Confidential Source met with **PACHECO** in the parking lot of Home Depot, 1933 Davis Street, San Leandro, California. Agents made audio and video recordings of this meeting. During that meeting, and in an effort to engage in methamphetamine transactions in the future, **PACHECO** provided the CS with a free sample of

3

crystal methamphetamine. During that same meeting, **PACHECO** agreed to provide the CS with 15 pounds of crystal methamphetamine on March 3, 2011 in Concord, CA, with the specific location to be determined later.

8.  **PACHECO** gave the phone number (650) 281-8736 to the CS and identified this as his telephone number. Since February 24, 2011, PACHECO and the CS have exchanged multiple telephone calls, with **PACHECO** calling from (650) 281-8736 and with the CS calling **PACHECO** at that number.

9.  Based on a review of telephone records, agents were able to determine that the phone number (650) 281-8736 was being used by **PACHECO**. Specifically, the subscriber listed on the account for the month of January 2011 is **EDUARDO PACHECO**, and he has been the listed subscriber since 2006.

10. Based on prior conversations between the CS and **PACHECO**, the two agreed on March 3, 2011 at 10:30 a.m. as the date and time for the purchase of 15 pounds of crystal methamphetamine on in Concord.

11. On March 3, 2011, at approximately 8:00 a.m., DEA and ICE agents established surveillance at 1 Delmar Court, Redwood City, CA, the residence of **PACHECO**.

12. At 9:13 a.m., agents observed **PACHECO** leave 1 Delmar Court, Redwood City, CA, get into a green Ford truck driven by a Hispanic Male Adult, later identified as **RONALD PELAEZ**, and drive away. Agents maintained surveillance on the green Ford, and they observed **PACHECO** and **PELAEZ** driving around, eventually travelling North on Route 101 to Route 80.

13. Shortly before 8:30 a.m., **PACHECO** called the CS from cell phone number (650) 281-8736 and asked to move the time of the transaction to 11:30 a.m., and the CS agreed.

14. Between 10:30 a.m. and 11:00 a.m., **PACHECO** and the CS spoke on the phone,

4

again using cell phone number (650) 281-8736. During this call, **PACHECO** attempted to move the location of the transaction from Concord, CA, to Vallejo, CA. The CS indicated that he wanted to meet in Concord, and **PACHECO** agreed. They agreed to meet at the parking lot of Mimi's Café, in the 1600 Block of Willow Pass Road in Concord. At roughly the time of the phone call, agents observed **PACHECO** and **PELAEZ** in Vallejo.

15. At approximately 10:50 a.m., **PACHECO** and **PELAEZ** stopped at a residence located at 530 Echo Summit Rd, Vallejo. At that residence, an unknown Hispanic Male Adult entered the green Ford truck. The truck then left this location and headed for Route 37 toward Petaluma, CA.

16. At approximately 12:26 p.m., the green Ford truck that **PELAEZ** was driving and in which **PACHECO** was a passenger stopped at an apartment complex at Apache Street and West Steele Lane in Santa Rosa, CA. At that location, the occupants of the Ford truck met with another unknown Hispanic Male Adult who was driving a minivan. At approximately 12:37 p.m., the green Ford truck drove to a residence at 3509 Coffee Lane in Santa Rosa, CA. At 12:45 p.m., the truck departed and headed South on Route 101.

17. At approximately 1:00 p.m., the CS called **PACHECO** at cell phone number (650) 281-8736. During that call, **PACHECO** informed the CS that he was "up North" and was heading to Hayward for a pick up, after which he would arrive in Concord. **PACHECO** informed the CS that he would be about another hour.

18. At 3:31 p.m., in the parking lot of the WalMart at 30600 Dyer St, Union City, CA, agents observed **PACHECO** meet with a Hispanic Male Adult (HMA) who was driving a green Honda van. This HMA was later identified as **ELISONDO VARELAS**. **PACHECO** met with **VARELAS** at the window of the van, obtained a shoe box-sized package, and then ran back to the

5

green Ford truck and drove off. **PACHECO** then placed a call to the CS and stated that he had to "pick up 2 to make 15," referring to the 15 pounds of methamphetamine that **PACHECO** agreed to sell the CS.

19. Agents then followed the Honda van from the WalMart parking lot to a residence in Redwood City, CA. At 3:55 p.m., **ELISONDO VARELAS** arrived at 219 Pacific Ave, Redwood City in the Honda van. **VARELAS** went to the rear of the property and entered a multi-colored out building. At 4:40 p.m., **VARELAS** departed the out building at a running pace and drove away in the Honda van.

20. Although the location of the transaction was originally set for Mimi's Café in the 1600 Block of Willow Pass Road in Concord, the location was subsequently changed. At approximately 4:30 p.m., **PACHECO** met with the CS in the parking lot of Wendy's at 1551 Monument Boulevard in Concord, CA. When he arrived, **PACHECO** informed the CI that he only had two pounds of the agreed-upon fifteen pounds of methamphetamine. **PACHECO** showed the CS the 2 pounds. PACHECO then informed the CS that he was going to call a second person to bring the rest.

21. Shortly after 7:30 p.m., **PACHECO, PELAEZ,** and the CS were standing outside in the Wendy's parking lot, waiting for the rest of the methamphetamine to arrive. At 7:38 p.m., **VARELAS** walked across Monument Boulevard to the Wendy's parking lot, where he met with both **PACHECO** and the CS, with **PELAEZ** nearby. **VARELAS** was carrying a bag, and the CS understood that this bag contained the remaining methamphetamine. At 7:40 p.m., the CS gave a pre-arranged arrest signal, and **PACHECO, VARELAS,** and **PELAEZ** were taken into custody. There were approximately eight pounds of what was presumptively tested as crystal methamphetamine in the bag recovered from **VARELAS**.

## CONCLUSION

22. Based on the foregoing facts, my training and experience, and consultation with other law enforcement agents with experience in drug trafficking investigations, I believe there is probable cause to believe that: (1) on March 3, 2011, **EDUARDO PACHECO** violated the following statues: 21 U.S.C. § 841(a)(1) – Possession of Methamphetamine with Intent to Distribute, 21 U.S.C. § 843(b) – Use of a Communications Facility in Connection with a Drug Trafficking Offense, and 21 U.S.C. § 846 – Conspiracy to Possess with Intent to Distribute Methamphetamine; (2) on March 3, 2011, **ELISONDO VARELAS** violated the following statues: 21 U.S.C. § 841(a)(1) – Possession of Methamphetamine with Intent to Distribute and 21 U.S.C. § 846 – Conspiracy to Possess with Intent to Distribute Methamphetamine; and (3) on March 3, 2011, **RONALD PELAEZ** violated the following statue: 21 U.S.C. § 846 – Conspiracy to Possess with Intent to Distribute Methamphetamine.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

_____
Michael Ertz
Special Agent
Immigration Customs Enforcement

Sworn and subscribed to before me
This ___ day of March, 2011

_____
HON. JOSEPH C. SPERO
United States Magistrate Judge

7