MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

KEVIN J. BARRY (CABN 229748)
Assistant United States Attorney

    450 Golden Gate Ave., Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    E-Mail: kevin.barry@uadoj.gov

Attorneys for The United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br> v. <br> RONALD PELAEZ, <br>     Defendant. | No. CR 11-0154 MMC <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Date: March 13, 2013 <br> Time: 2:15 p.m. <br><br> Hon. Maxine M. Chesney |

## INTRODUCTION

The defendant, Ronald Pelaez, stands before the Court to be sentenced after pleading guilty to all counts of an Superseding Information charging him with Use of a Communications Facility for the Purpose of Drug Trafficking, in violation of 21 U.S.C. § 843(b). The Court has set March 13, 2013, at 2:15 p.m. as the date for judgment and sentencing. Defendant pleaded guilty pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). The government submits the following sentencing memorandum in order to advise the Court of the government's Sentencing Guidelines calculation, the lack of any objections to the final

presentence report ("PSR"), and its sentencing recommendation.

The government agrees with United States Probation that the adjusted offense level for the defendant's crime is 29 and that the correct criminal history category is II. The government submits that a sentence of 70 months of incarceration, followed by one year of supervised release, and a $200 special assessment is appropriate in this case.

## THE DEFENDANT'S OFFENSE CONDUCT

On February 24, 2011, the co-defendant Eduardo Pacheco began negotiating with a DEA confidential source (CS) to sell the CS 15 pounds of methamphetamine, with March 3, 2011 as the date of the transaction. PSR ¶¶ 9-10. Defendant's role in the March 3, 2011 transaction was only that of a driver. PSR ¶¶ 11, 15. He did not negotiate with the CS; he did not supply any of the methamphetamine; and he never handled any of the drugs.

On May 3, 2011, Pacheco sought to gather the 15 pounds from a number of different sources throughout the Bay Area, with Defendant driving him to various locations. Eventually, Pacheco was able to obtain methamphetamine from co-defendant Elisondo Varelas. At 3:30 p.m. that day, in the parking lot of a WalMart in Union City, CA, Varelas provided Pacheco with an initial supply of two pounds of methamphetamine. PSR ¶¶ 13-14. Varelas departed and gathered an additional eight pounds. Defendant then drove Pacheco to a meeting with the CS in the parking lot of a Wendy's in Concord, CA, where they all waited for Varelas. PSR ¶¶ 14-15. When Varelas arrived with the rest of methamphetamine, all three defendants were arrested. PSR ¶ 15.

## SENTENCING GUIDELINES CALCULATIONS

The Sentencing Guidelines calculation for the defendant's offense level is as follows:

    a.    <u>Base Offense Level</u>:    38
(U.S.S.G. §§ 2D1.6, 2D1.1(a)(5), (c)(1)
(at least 1.5 kilos of actual methamphetamine))

        (U.S.S.G. § 2D1.1(a)(5)(B)(iii)    -4
(Minor Participant))

    b.    <u>Decrease for Role in the Offense</u>:    -2
(U.S.S.G. § 3B1.2(b)
(Minor Participant))

|  | c. | Acceptance of Responsibility:<br>(U.S.S.G. §§ 3E1.1(a),(b) | -3 |
|---|---|---|---|
|  | d. | Adjusted Offense Level: | 29 |

As the PSR shows, the defendant has a limited criminal history. His only conviction is for the equivalent of a DUI, and he was on probation for that offense at the time he participated in this conduct. Thus, he qualifies as a CHC II. PSR ¶¶ 36-39. Because Defendant has fully accepted responsibility, the government moves for the additional -1 offense level deduction under U.S.S.G. § 3E1.1(b).

With an adjusted offense level of 29 and a CHC of II, the Guidelines authorize a sentence of between 97 and 121 months' imprisonment. Because Defendant pleaded guilty to two violations of 21 U.S.C. § 843(b), each of which carries a statutory maximum of 48 months, there is a maximum of 96 months. Under the terms of the plea agreement, if the Court accepts the agreement, Defendant can receive a term of between 48 and 70 months by having sentences for the two counts run consecutively. Because of the defendant's characteristics, discussed in the PSR and below, a sentence of 70 months is appropriate here.

## SECTION 3553(A) FACTORS

Section 3553(a) directs courts to consider a number of factors in determining an appropriate sentence. In this case, these factors indicate that a term of 70 months in custody is sufficient, but not greater than necessary, to achieve the goals of sentencing. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The key factors are the nature and circumstances of the offense and the history and characteristics of the defendant, 3553(a)(1), the need for deterrence, 3553(a)(2)(B), the sentencing range established for the offense in the Guidelines, 3553(a)(4)(A), and the need to avoid unwarranted disparities in sentencing, 3553(a)(6).

With respect to the nature of the offense and the history and characteristics of the defendant, the current offense is the defendant's only significant conviction. This conviction represents the devastating effects on an individual's life of a single poor choice. Because of Defendant's decision to assist his friend in a methamphetamine deal, he faces at least four years in prison as well as the prospect of likely deportation, despite the family he has created in this

country.

At the same time, however, the serious consequences Defendant faces are a result of the serious crime in which he participated, albeit in minor role. Defendant did not simply assist in a street corner marijuana deal; he helped his co-defendant conduct a transaction for ten pounds of methamphetamine. The pernicious nature of that drug, particularly at the quantities involved in Defendant's crime, are reflected in the serious penalties Congress and the Sentencing Commission have established, including a ten year mandatory minimum term for trafficking a fraction of the amount involved in this case.

Due to Defendant's single prior conviction and his status on probation, he is ineligible for Safety Valve. Thus, he would not be able to avoid the ten year minimum term for his original charge – the conspiracy with Pacheco and Varelas to distribute methamphetamine. Were Defendant eligible for Safety Valve, his Guidelines range would have been 70-87 months (offense level 27 at CHC I, with deductions for both minor role and safety valve). Because of his history and characteristics, and because Defendant fully accepted responsibility, including a decision not to litigate any motions, such as for disclosure of the identity of the confidential informant, the government agreed to allow Defendant to plead to two violations of 21 U.S.C. § 843(b), with a sentence capped at the low end of that 70-87 month range.

In terms of specific deterrence, the government agrees with Defendant that he poses little risk of recidivism. The current offense was a crime of opportunity – poor opportunity, to be sure – but it arose from the fact that Defendant was friends with someone in the drug business. At the conclusion of his term in custody, Defendant will be certain to avoid the type of relationships and the choices he made that led him to where he is now. However, the Court must also consider general deterrence, and it should impose a sentence that will deter others in Defendant's position from agreeing to facilitate methamphetamine deals.

With respect to the Guidelines, the defendant's character and crime fall within the "heartland" of cases to which the Guidelines are intended to apply, and therefore, the sentencing range established for such offenses serves as an effective guide for determining a reasonable sentence. *See Rita v. United States*, 551 U.S. 338, 351 (2007); 18 U.S.C. § 3553(a)(4)(A). The

sole caveat to this is the fact that defendant's role in the offense was quite minor. It was not minimal, as Defendant spent the entire day driving Pacheco from one potential methamphetamine source to the next, but, as discussed above, all Defendant did was drive. He did not negotiate with the CS; he did not supply any of the methamphetamine; and he did not handle any of the drugs. The low level of Defendant's involvement is reflected in the Guidelines deductions for minor role, however. It is also reflected in the government's agreement to allow Defendant to plead to an offense that avoids the otherwise mandatory ten-year term.

Finally, the Court should consider the need to avoid unwarranted sentencing disparities among similar defendants. Here, the Court can reference the 140 month sentences it imposed on Pacheco, a co-defendant with a greater criminal history (CHC III) and on Varelas (CHC I). These sentences represented significant departures from the applicable Guidelines range. With respect to Pacheco, it was 70 months below the low end of his 210-262 month range, and for Varleas, it was 28 months below the low end of a 168-210 month range. A sentence of 70 months would be 27 months below the low end of the 97-121 month range applicable to Defendant's offense level and criminal history. It also represents half the sentence the Court imposed on the co-defendants. In terms of the co-defendant's culpability and the reductions the Court made for his co-defendants, Pacheco was the architect of what would have been a 15 pound methamphetamine transaction, and Varelas was able to supply ten pounds of the drug in only a matter of hours. Defendant merely drove.

In light of the nature of this crime, and to ensure parity with the co-defendants, for whom the Court imposed this condition, the government also requests that the Court impose a special search condition with his term of supervised release:

### Special Condition (Searches)

The defendant shall submit his person, residence, office, vehicle, or any property under his control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time with or without cause and with or without reasonable suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

## CONCLUSION

In full consideration of the defendant's history and characteristics together with the goals of sentencing, the United States respectfully requests that the Court sentence Defendant Ronald Pelaez to 70 months in custody, followed by one year of supervised release, and a $200 special assessment.

Dated: March 8, 2013

Respectfully submitted,

MELINDA HAAG
United States Attorney

_____/s/_____
KEVIN J. BARRY
Assistant United States Attorney